UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stephanie M.,<br><br>         Plaintiff,<br><br>v.<br><br>Andrew SAUL,<br><br>         Defendant. | Case No.:  20-cv-01711-MMA-BGS<br><br>**REPORT AND RECOMMENDATION TO:**<br><br>**(1) GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 12];**<br><br>**(2) DENY DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF No. 13]; AND**<br><br>**(3) REMAND FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

## I. INTRODUCTION

On September 1, 2020, Plaintiff Stephanie M. ("Plaintiff" or "Claimant") filed her Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of his disability insurance benefits under the Social Security Act.  (ECF No. 1.)[1]  On September 15, 2020, this Court issued an order granting Plaintiff's IFP motion.  (ECF No. 4.)  The Commissioner filed the

---

[1] The Court cites the electronic CM/ECF pagination for citations.

1

Administrative Record on June 3, 2021.  (ECF No. 11.)  On July 8, 2021, Plaintiff filed a Motion for Summary Judgment seeking reversal of the final decision denying benefits and a remand for further administrative proceedings.  (ECF No. 12.)  Initially, Plaintiff argued that the Administrative Law Judge ("ALJ") committed reversible error for his DAA analysis.  (ECF No. 12-1 at 3.)  However, the Plaintiff also seemed to have raised three additional reasons for why the ALJ erred: (1) for failing to properly evaluate Plaintiff's subjective complaints regarding whether Plaintiff's symptoms are controlled when taking medication, (2) for failing to properly evaluate Plaintiff's subjective complaints due to her daily activities, and (3) for not providing any explanation as to why the ALJ did not believe the second and third hypotheticals at Step Five.  (*Id.* at 3–6.)  On August 9, 2021, the Commissioner filed his Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion.  (ECF No. 13.)  Plaintiff filed a Reply on August 23, 2021.  (ECF No. 14.)

After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 12) be **GRANTED**, the Defendant's Cross Motion for Summary Judgment (ECF No. 13) be **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Order.

## II.   PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on October 23, 2017, with an alleged onset date of July 1, 2016.  (ECF No. 11-2 at 23.)  Plaintiff's application was initially denied on February 15, 2018, and upon reconsideration on April 27, 2018.  (*Id.*)  At Plaintiff's request, a hearing before an ALJ was held on July 22, 2019 at which Plaintiff was represented by counsel and testified, along with a vocational expert ("VE") who also provided testimony.  (ECF Nos. 11-4 at 22–25 [request for hearing], 48 [notice of hearing]; ECF No. 11-2 at 50–76 [hearing transcript].)  On September 10, 2019, the ALJ issued a decision finding that Plaintiff was not disabled and denied Plaintiff's

application for benefits.  (ECF No. 11-2 at 23–44.)  The Appeals Council denied review on June 29, 2020.  (*Id.* at 2–4.)

## III.   SUMMARY OF FIVE STEPS

The ALJ's decision explains and then goes through each potentially dispositive step of the familiar five-step evaluation process for determining whether an individual has established eligibility for disability benefits.  (ECF No. 11-2 at 23–44); *see Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724–25 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520.

At Step One, the ALJ determined that Plaintiff had not "engaged in substantial gainful activity since October 23, 2017, the application date."  (ECF No. 11-2 at 25.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:

> Polysubstance Abuse/Dependence (Methamphetamines; Cocaine; Cannabis / Marijuana; Alcohol; Other Psychoactive Substances and Stimulants); Mental Impairments (Variously Diagnosed as Bipolar Disorder; Bipolar Manic-Depressive Disorder; Bipolar Disorder and Depression with Suicidal Ideation; Bipolar Disorder-Current Episode Depressed; Bipolar Disorder without Psychotic Features; Anxiety Disorder; Substance Induced Mood Disorder; Mania with History of Bipolar Disorder Precipitated by Drug Use; Borderline Traits; Binge Eating Disorder).

(*Id.*)  At Step Three, the ALJ considered whether the Plaintiff's impairments "meet or equal" one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings.  *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926.  Here, the ALJ found that Plaintiff did meet a listing.  (ECF No. 11-2 at 26–29.)  The ALJ determined that the Plaintiff's impairments, including substance abuse, Plaintiff's impairments met section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).  (*Id.*)  The ALJ stated that the Plaintiff's "mental impairments, including the substance use disorder(s), meet the requirements of listings 12.04[ and that the] paragraph 'A' requirements with the substance use are met[,] as the claimant meets 12.04(A)(l)(a), (b), (d), (e), (f), (g), (i)."  (*Id.* at 27.)  The ALJ then found that the Plaintiff

"has a marked limitation in each area with the substance use[,] [t]herefore, the 'paragraph B' criteria are satisfied and 12.04(B) is met." (*Id.* at 27.)  The ALJ then provided his analysis in how he decided that Plaintiff met the requirements of listing 12.04. (*Id.*)  However, the ALJ did not make a disability finding at this Step.

Instead of proceeding to Steps Four and Five as is required when there isn't a disability determination at Step Three, the ALJ reanalyzed Step Two. He found that "[i]f the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments." (*Id.* at 29.)  Then at Step Three, the ALJ found that "[i]f the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d))." (*Id.* at 29–31.)

If the Plaintiff does not meet a listing, the ALJ "assess[es] and makes a finding about [the Plaintiff's] residual functional capacity [("RFC")] based on all the relevant medical and other evidence in [the Plaintiff's] case record." 20 C.F.R. § 404.1520(e).  A claimant's RFC is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c).  The RFC is used at the fourth and fifth steps to determine whether the Plaintiff can do his or her past work (Step Four) or adjust to other available work (Step Five). *Id.*

Here, the ALJ found the following RFC for Plaintiff:

If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can learn, remember and perform simple, routine, and repetitive work tasks, involving simple 1- and 2-step work instructions, which are performed in a routine, predictable, and low

4

stress work environment (defined as one in which there are no rapid production pace work tasks or high quota requirements, few work place changes, and no close personal supervision). She can attend, concentrate, and maintain pace for 2 hours at a time with normal breaks. She may have occasional contact with supervisors and coworkers. She should have only minimal and superficial contact with the public.

(*See* ECF No. 11-2 at 31–42.)  At Step Four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 42–43.)

At Step Five, the ALJ considers whether the Plaintiff can do other work, considering the Plaintiff's age, education, work experience, and the limitations in the RFC.  20 C.F.R. § 404.1520(a)(4)(v).  If the Plaintiff can do other available work, then the Plaintiff is found not disabled; but if the Plaintiff cannot do any other available work, then the claimant is disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(v), 404.1520(g); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  Here, the ALJ heard and relied on a VE's testimony that opined that work existed in significant numbers in the national economy for a person of Plaintiff's age, education, work experience and with the RFC found by the ALJ. (ECF No. 11-2 at 43–44.)

If the ALJ finds that the Plaintiff is disabled and there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the Plaintiff's drug addiction or alcoholism is a contributing factor material to the determination of disability, unless the ALJ finds that the Plaintiff is eligible for benefits because of his or her age or blindness. *See* 20 CFR 416.920(g) and 416.935.  The ALJ found that "[t]he substance use disorder is a contributing factor material to the determination of disability because the [Plaintiff] would not be disabled if she stopped the substance use[.]"  (ECF No. 11-2 at 43.)  The ALJ then stated that "[b]ecause the substance use disorder is a contributing factor material to the determination of disability, the [Plaintiff] has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date

5

of this decision." (*Id.*)

## IV.   SCOPE OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision. 42 U.S.C. § 405(g). This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision. *See id.*; 20 C.F.R. § 404.900(a)(5). The matter may also be remanded to the Social Security Administration for further proceedings. 42 U.S.C. § 405(g).

If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). Substantial evidence is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." *Id.*

In making this determination, the Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

///

///

## V.   **DISCUSSION**

Plaintiff's primary argument is that the "ALJ did not use the correct [drug and alcohol abuse] analysis [("DAA Analysis")] in making [the] determination" as to Plaintiff's disability and substance abuse.[2]  (ECF No 12-1 at 3.)

Although it appeared that the Plaintiff's argument dealt specifically with the DAA analysis, the Plaintiff seems to have also raised three additional reasons for why the ALJ erred: (1) for failing to properly evaluate Plaintiff's subjective complaints regarding whether Plaintiff's symptoms are controlled when taking medication, (2) for failing to properly evaluate Plaintiff's subjective complaints due to her daily activities, and (3) for not providing any explanation as to why the ALJ did not believe the second and third hypotheticals at Step Five.  (*Id.* at 3–6.)  The Court will first address whether the ALJ erred as to his DAA analysis.

### A. DAA ANALYSIS

#### 1.  Applicable Standard

The Contract with America Advancement Act of 1996 amended the Social Security Act, which provided that "[a]n individual shall not be considered disabled [. . .] if alcoholism or drug addiction would [. . .] be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d) (2)(C).  Therefore, where relevant, an ALJ must conduct a DAA analysis and determine whether a claimant's disabling limitations remain in the absence of drug and alcohol use.  20 C.F.R. §§ 404.1535, 416.935.[3]

---

[2] In her Notice of Motion, the only argument that the Plaintiff provided was that the ALJ "made an error of law and fact by not properly applying the rules for a [DAA] analysis."  (ECF No 12 at 2.)  The only argument title presented in the Plaintiff's merits brief stated that the ALJ did not properly apply the standard for drug and alcohol abuse.  (ECF No 12-1 at 3–8.)

[3] The regulations regarding claimants with DAA state:

In making this determination, the Ninth Circuit set forth a two-step process in which the Commissioner should consider the disability claims of individuals who are found to have an alcohol or substance abuse problem. *Bustamante*, 262 F.3d at 955.

As to Step 1, the ALJ must first conduct the sequential five-step inquiry used to evaluate disability "without separating out the impact of alcoholism or drug addiction." *Bustamante*, 262 F.3d at 955–56 (remanding "with instructions that the ALJ proceed with step three [and four and five, if necessary] of the disability determination without attempting to separate out the impact of [. . .] alcohol abuse."); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); SSR 13–2p, 2013 WL 621536, at *5–7. "If the ALJ finds that the claimant is not disabled under the [initial] five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935." *Bustamante*, 262 F.3d at 955.

---

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.

(b)  Process we will follow when we have medical evidence of your drug addiction or alcoholism.
    (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
    (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
        i. If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
        ii. If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

*See* 20 C.F.R. §§ 404.1535, 416.935.

8

As to Step 2, if the ALJ finds the claimant disabled after the initial five-step inquiry and there is medical evidence of drug addiction or alcoholism, the ALJ conducts the five-step inquiry a second time, separating out the impact of the DAA, to determine whether DAA is a contributing factor material to the disability determination. *See*, *e.g.*, *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Bustamante*, 262 F.3d at 955; *Young v. Comm'r Soc. Sec. Admin.*, 214 F. Supp. 3d 987, 994 (D. Or. 2016) ("Where the ALJ has determined that a claimant is disabled considering all of her impairments, including DAA, the ALJ must then undertake a second sequential evaluation to determine whether DAA is a contributing factor material to the disability determination."); *Hoban v. Colvin*, No. 3:15-CV-01786-HZ, 2016 WL 4059200, at *3 (D. Or. July 2016) ("Bustamante requires a two-step process. The ALJ first conducts "the five-step inquiry without separating out the impact of alcoholism or drug addiction[,]" and then, if the claimant is disabled under that analysis, the ALJ must repeat the five-step inquiry considering only those limitations not caused by drug or alcohol abuse."); *Paulsen v. Colvin*, No. C14-1240RSM, 2015 WL 1565983, at *3 (W.D. Wash. Apr. 2015) ("If the ALJ does find the claimant to be disabled and there is medical evidence of the claimant's drug addiction or alcoholism, then the ALJ must apply the sequential-evaluation process a second time (the "DAA analysis") to determine whether plaintiff would still be disabled if he or she stopped using drugs and alcohol."); *Almazan v. Colvin*, No. 1:13-CV-001172-SMS, 2014 WL 5304979, at *21 (E.D. Cal. Oct. 2014) ("ALJ erred by failing to parse the impact of DAA on Plaintiff's impairments and instead considered the effect of Plaintiff's DAA in her initial pass at the sequential analysis. [. . .] Only after a complete five-step inquiry led to a disability determination should the ALJ have evaluated whether Plaintiff was disabled absent DAA.") (citing *Bustamante*, 262 F.3d at 955); *Maloney v. Comm'r of Soc. Sec.*, No. 6:13-CV-00821-AC, 2014 WL 3871214, at *7 (D. Or. Aug. 2014) ("If the ALJ finds the claimant is disabled, the ALJ must perform the sequential evaluation process a second time,

conducting the DAA Analysis.") (citing *Bustamante*, 262 F.3d at 955); *see also* 20 C.F.R. §§ 404.1535, 416.935.

A finding of a disability is a condition precedent to applying the second step of the DAA Analysis under 42 U.S.C. § 423(d)(2)(C). *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C). [. . .] The Commissioner must first make a determination that the claimant is disabled."); *Bustamante*, 262 F.3d at 955 (agreeing with Drapeau v. Massanari); *Avery v. Colvin*, No. C13-125RAJ, 2013 WL 6261845, at *2 (W.D. Wash. Dec. 2013) (citing 20 C.F.R. §§ 404.1535, 416.935; *Bustamante*, 262 F.3d at 955).

"The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether an individual would still be found disabled if [he or she] stopped using alcohol or drugs." *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998); *see* 20 C.F.R. §§ 404.1535, 416.935; *see also* Social Security Ruling ("SSR") 13–2p, 2013 WL 621536 (explaining how the Commissioner evaluates cases involving drug addiction and alcoholism[4]). This DAA Analysis involves a process separating out the effects of the substance use and its impact on any other impairments, physical or mental. *Bustamante*, 262 F.3d at 955. The ALJ "will evaluate which of [the claimant's] current physical and mental limitations ... would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or

---

[4] The Commissioner defines "drug addiction and alcoholism" as used in the Social Security Act as:

> Substance Use Disorders: that is, Substance Dependence or Substance Abuse as defined in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association[. . . .] In general, the DSM defines Substance Use Disorders as maladaptive patterns of substance use that lead to clinically significant impairment or distress.

SSR 13–2p, 2013 WL 621536, at *3.

all of [the claimant's] remaining limitations would be disabling." *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). The ALJ reviews the medical evidence and, if necessary, consults with a medical expert, in determining what limitations, if any, would remain if plaintiff stopped using drugs or alcohol. *Baker v. Astrue*, No. CIV. 07-6332TC, 2009 WL 902349, at *2 (D. Or. Mar. 2009). "If the [. . .] remaining limitations would not be disabling, [the Commissioner] will find that [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability[,]" and benefits will be denied. *See* 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

     2. <u>Analysis</u>

The Plaintiff argued that the ALJ "made an error of law and fact by not properly applying the rules for a [DAA] analysis" in her Notice. (ECF No. 12 at 2.) Plaintiff's merits brief argued that the ALJ did not properly apply the standard for drug and alcohol abuse. (ECF No. 12-1 at 3–8.) She stated:

> In this case the primary discussion of [Plaintiff's] disability takes place in conjunction with her use of illegal drugs and alcohol. In this case the ALJ determined that while [Plaintiff] is disabled when using illicit substances, she is not disabled when she is not using these substances. This opinion is not supported by the record and the ALJ did not use the correct analysis in making this determination.

> Substance abuse in and of itself does not disqualify an applicant from SSI benefits. [citing *Sousa*, 143 F.3d at 1245]. When substance abuse is an issue, the ALJ needs to make a determination of whether an applicant for SSI would still be disabled if they were not abusing drugs and alcohol. Id. This analysis can be very complex in trying to untangle limitations caused by substance abuse and limitations caused by severe mental health issues, and is complex in this case.

(*Id.* at 3.) Plaintiff did not devote anything else in her brief regarding the DAA Analysis. (*Id.* at 3–8.) Further, the Defendant did not specifically address whether the ALJ properly applied the standard for drug and alcohol abuse. (*Id.*)

11

1   Under the Commissioner's regulations implemented to govern disability claims

2   involving substance abuse, the ALJ must conduct a specific two-step DAA Analysis.

3   *Bustamante*, 262 F.3d at 955; *see also* 20 C.F.R. §§ 404.1535, 416.935.  The ALJ must

4   first conduct the standard five-step sequential evaluation without separating out the impact

5   of drug addiction or alcoholism in order to determine whether a claimant is disabled.

6   *Bustamante*, 262 F.3d at 955; *Maloney*, 2014 WL 3871214, at *7.  If the ALJ finds that the

7   claimant is disabled and there is medical evidence of his or her substance abuse, the ALJ

8   must perform the sequential evaluation process a second time to comply with the DAA

9   Analysis to determine if drug or alcohol abuse is a contributing factor material to the

10   disability determination.  *Bustamante*, 262 F.3d at 955; *see* 20 C.F.R. §§ 404.1535,

11   416.935; SSR 13–2p, 2013 WL 621536, at *5–7; *Young*, 214 F. Supp. 3d at 994 ("Where

12   the ALJ has determined that a claimant is disabled considering all of her impairments,

13   including DAA, the ALJ must then undertake a second sequential evaluation to determine

14   whether DAA is a contributing factor material to the disability determination.").

15   In the present case, the ALJ completed the initial five-step inquiry up to Step Three.

16   (*See* ECF No. 11-2 at 25–44.)  At Step Three, the ALJ determined that the Plaintiff's

17   impairments, including substance abuse, met section 12.04 of 20 CFR Part 404, Subpart

18   P, Appendix 1.  (*Id.* at 26–29.)  The ALJ stated that the Plaintiff's "mental impairments,

19   including the substance use disorder(s), meet the requirements of listings 12.04[ and that

20   the] paragraph 'A' requirements with the substance use are met[,] as the claimant meets

21   12.04(A)(l)(a), (b), (d), (e), (f), (g), (i)."  (*Id.* at 27.)  The ALJ then found that the Plaintiff

22   "has a marked limitation in each area with the substance use[,] [t]herefore, the 'paragraph

23   B' criteria are satisfied and 12.04(B) is met."  (*Id.* at 27.)  After providing his analysis in

24   how Plaintiff met the requirements of listing 12.04, the ALJ then began the DAA

25   Analysis.  (*Id.* at 27–29.)

26

27                                             12

28

At Step Three of the sequential evaluation process, the ALJ will find that the claimant is disabled[5] if the claimant has an impairment that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 and meets the duration requirement.[6]  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii);[7] *see also Garrison*, 759 F.3d at 1011 (citing 20 C.F.R. §§ 404.1520(a)); *Schuh v. Saul*, No. 18-CV-1398-GPC-AGS, 2019 WL 4729642, at *6 (S.D. Cal. Sept. 2019) (same); *Truong v. Berryhill*, No. 17CV02179BENRNB, 2018 WL 6198279, at *11 (S.D. Cal. Nov. 2018) ("[T]he ALJ must find that the claimant has an impairment that corresponds in diagnosis, severity and duration to a listed impairment."), report and recommendation adopted sub nom. *Vy Truong v. Berryhill*, No. 17-CV-02179-BEN-RBB, 2018 WL 6603872 (S.D. Cal. Dec. 2018).

Despite concluding that Plaintiff's impairments met the severity requirements in Listing 12.04, the ALJ did not make a disability finding as required by SSA regulations

---

[5] Finding the claimant "disabled" or "not disabled" at any step ends the inquiry. 20 C.F.R. §§ 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step."); 416.920(a)(4) (same).

[6] The duration requirement states that "[u]nless [the] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1509.

[7] These sections state in pertinent part:

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)

20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  The paragraph (d) referenced above states:

> (d) When your impairment(s) meets or equals a listed impairment in appendix 1. If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.

20 C.F.R. §§ 404.1520(d); 416.920(d).

13

nor that Plaintiff met the duration requirement.  Instead, the ALJ proceeded directly to the DAA Analysis.  (ECF No. 11-2 at 29.)  After discussing that Plaintiff's impairments including substance abuse met a listing, the ALJ reanalyzed Step Two and found that "[i]f the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments."  (*Id.* at 29.)  At Step Three, the ALJ then found that "[i]f the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1[.]"  (*Id.* at 29–31.)

The ALJ then went onto considering Plaintiff's residual functional capacity while trying to determine what the capacity would be had Plaintiff stopped the substance abuse.  (*Id.* at 31–42.)  The ALJ found that the Plaintiff had no past relevant work under Step Four.  (*Id.* at 42–43.)  As to Step Five, the ALJ then found that the Plaintiff "would be capable of making a successful adjustment to work that exists in significant numbers in the national economy" if she stopped the substance abuse.  (*Id.* at 43–44.)  Following the ALJ's five-step DAA Analysis, which considered Plaintiff's substance abuse, the ALJ indicated:

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision.

(*Id.* at 44.)

However, a finding of a disability is a condition precedent to an application of the DAA Analysis under 42 U.S.C. § 423(d)(2)(C).  *See Drapeau*, 255 F.3d at 1214 ("The implementing regulations make clear that a finding of disability is a condition precedent to

an application of § 423(d)(2)(C). [. . .] The Commissioner must first make a determination that the claimant is disabled."); *Bustamante*, 262 F.3d at 955 (agreeing with Drapeau v. Massanari); *Moore v. Colvin*, No. 14CV2361-LAB-KSC, 2016 WL 791149, at *26 (S.D. Cal. Feb. 2016) (emphasizing that despite the ALJ concluding that the plaintiff met the severity requirements in multiple listings, the ALJ still did not make a disability finding and prevented the ALJ from properly moving to the DAA analysis), report and recommendation adopted, No. 14CV2361-LAB-KSC, 2016 WL 759886 (S.D. Cal. Feb. 26, 2016); *Avery*, 2013 WL 6261845, at *2 (citing 20 C.F.R. §§ 404.1535, 416.935; *Bustamante*, 262 F.3d at 955). "Unless and until there is a finding of disability, an ALJ should not proceed with a DAA Analysis to determine whether the claimant's substance use is a 'contributing factor material to the determination of disability.'" *Moore*, 2016 WL 791149, at *27 (citing *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001)).

The ALJ erred in failing to make a disability finding before conducting the DAA Analysis and attempting to determine whether Plaintiff's substance abuse was a contributing factor material to the determination of disability. The ALJ should have proceeded with the RFC and Steps Four and Five in the initial sequential evaluation without separating out the impact of alcoholism or drug addiction. If the ALJ found that the Plaintiff was disabled after this initial five-step inquiry and there was medical evidence of drug addiction or alcoholism, the ALJ should have then proceeded to the DAA Analysis. *See Bustamante*, 262 F.3d at 955; *Young*, 214 F. Supp. 3d at 994.

In this case, the ALJ did not follow this procedure required for DAA cases. The ALJ instead went directly to the DAA Analysis after Step Three of the initial sequential evaluation. (ECF No. 11-2 at 29.) The ALJ analyzed whether the Plaintiff would be disabled after separating out the impact of alcoholism or drug addiction despite not making a disability finding nor completing the initial sequential evaluation. (*Id.* at 29–44.) Failure to apply the proper procedure in a DAA Analysis is reversible error. *See Brock v. Berryhill*,

707 F. App'x 459, 459–61 (9th Cir. 2017) ("In analyzing whether Brock's alcoholism was a contributing factor material to his disability, [. . .], the ALJ erred by failing first to consider whether Brock was disabled by the combination of his impairments of bipolar disorder and alcohol addiction before finding that his bipolar disorder standing alone was not disabling."); *Monan v. Astrue*, 377 F. App'x 629, 630 (9th Cir. 2010) ("The DAA analysis must be performed after the ALJ has made the five-step disability determination. [. . .] In the present case, there was no determination of "disabled." Thus, while the ALJ discussed Monan's drug use, he could not have performed the mandated DAA absent a disability determination"); *Moore*, 2016 WL 791149, at *27 ("Although he concluded that plaintiff's mental impairments met the severity requirements in Listings 12.06, 12.08, and 12.09, the ALJ did not make a disability finding as required by SSA regulations. [. . .] Instead of finding at step three that plaintiff was disabled, the ALJ proceeded directly to the "materiality analysis" and concluded that plaintiff's severe impairments were not disabling when he stopped drug and alcohol abuse. [. . .]  Unless and until there is a finding of disability, an ALJ should not proceed with a "materiality analysis" to determine whether the applicant's drug or alcohol addiction is a 'contributing factor[.]'"); *Reid v. Astrue*, No. 08-5249-PJH, 2009 WL 5062143, at *8 (N.D. Cal. Dec. 23, 2009) ("[I]t is reversible error for an ALJ to attempt to separate out the impact of a claimant's alcohol abuse before determining whether the claimant is disabled."); *Lindsay v. Barnhart*, 370 F. Supp. 2d 1036, 1044 (C.D. Cal. 2005) ("[I]t is reversible error for an ALJ to attempt to separate out the impact of a claimant's alcohol abuse before determining whether the claimant is disabled.").

Accordingly, IT IS RECOMMENDED that the Court find that the ALJ erred by failing to apply the Commissioner's regulations and the law of this Circuit requiring that the ALJ make a finding as to whether the Plaintiff is disabled before proceeding to the

16

second step of the DAA analysis.  *See Brock*, 707 F. App'x at 459–61; *Monan*, 377 F. App'x at 630; *Moore*, 2016 WL 791149, at *27 (citing *Ball*, 254 F.3d at 821).

### 3. Harmless Error

"ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'"  *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (An ALJ's reliance on erroneous reasons is harmless so long as the "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence").  "In other words, in each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case," *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  "[W]here the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Marsh*, 792 F.3d at 1173.

In the present case, the ALJ erroneously went to the second step of the DAA Analysis without first determining whether the Plaintiff was disabled in the initial five-step sequential process.  This was reversible error and not harmless error.  *See Lockhart v. Colvin*, No. 14-CV-00121-BAM, 2015 WL 5834284, at *11 (E.D. Cal. Oct. 2015) (indicating that it was reversible error when the ALJ failed to perform the proper analysis of Plaintiff's substance abuse disorder and indicated that the court will reverse the ALJ opinion and not reach the merits of the claimant's other challenges); *Reid*, 2009 WL 5062143, at *8 (indicating that "it is reversible error for an ALJ to attempt to separate out the impact of a claimant's alcohol abuse before determining whether the claimant is disabled." The court then remanded the case due to the ALJ failing to follow the applicable legal standards regarding DAA by considering the effects of substance abuse before determining whether the claimant was disabled.); *Lindsay*, 370 F. Supp. 2d at 1044

(indicating that "it is reversible error for an ALJ to attempt to separate out the impact of a claimant's alcohol abuse before determining whether the claimant is disabled."  The court then found that the ALJ committed legal error in failing to consider whether claimant was disabled without removing alcoholism from the equation and remanded for further proceedings.); *Compare Bustamante,* 262 F.3d at 954–55 (finding that the ALJ erred for considering claimant's substance abuse at Step Two of the initial sequential evaluation. The court then reversed and remanded with instructions that the ALJ proceed with the Step Three [and Four and Five, if necessary] without separating out the impact of alcohol abuse. The court instructed that the ALJ can begin the DAA Analysis once the ALJ finds the claimant disabled), and *Ricardo A. v. Saul*, No. 3:19-CV-00846-AHG, 2020 WL 4199823, at *14 (S.D. Cal. July 2020) ("[T]he ALJ's error was not harmless, because it is not 'clear from the record' that the error [regarding the ALJ's DAA Analysis] was 'inconsequential to the ultimate nondisability determination.'"), and *Jordan v. Astrue*, No. CV-10-03079-CI, 2012 WL 1466776, at *6 (E.D. Wash. Apr. 2012) ("Defendant's argument that the lack of a DAA evaluation was harmless error is unpersuasive. [. . .] If those limitations are credited and the DAA analysis is performed, it is unclear if the ALJ would reach the same result."), and *Snider-Willis v. Colvin*, No. 3:13-CV-05838-KLS, 2014 WL 3513363, at *3 (W.D. Wash. July 2014) (indicating that the case requires reversal and remand after finding that the ALJ's failure to properly apply the DAA Analysis cannot be deemed to be harmless), with *Parra*, 481 F.3d at 747–50 ("Although the decision does not explicitly label Parra's cirrhosis as disabling, the ALJ gave Parra the benefit of the doubt: the DAA Analysis assumed that Parra's cirrhosis was disabling and focused correctly upon whether abstinence would have cured this disability before his insurance lapsed. Because the DAA Analysis assumed Parra's cirrhosis was disabling, any error in arriving at that initial

1  conclusion would not affect the ALJ's ultimate decision that Parra's alcoholism was

2  material to his cirrhosis."[8]).

3  　　　Based on the above cited cases, the ALJ's failure to properly follow the DAA was

4  not harmless.  Accordingly, the Court's next issue is whether remand is appropriate.

5  　　　　　4.  Remand is Required

6  　　　"The rare circumstances that result in a direct award of benefits are not present in

7  this case." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).  "When the ALJ denies

8  benefits and the court finds error, the court ordinarily must remand to the agency for further

9  proceedings before directing an award of benefits." *Id.* at 1045 (citing *Treichler v. Comm'r*

10  *of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).  The credit-as-true analysis

11  "permits, but does not require, a direct award of benefits on review but only where the

12  [ALJ] has not provided sufficient reasoning for rejecting testimony and there are no

13  outstanding issues on which further proceedings in the administrative court would be

14  useful." *Id.* at 1044.

15  　　　The Court considers "whether there are 'outstanding issues that must be resolved

16  before a disability determination can be made' and whether further administrative

17  proceedings would be useful.'" *Id.* (quoting *Treichler*, 775 F.3d at 1101).  "In evaluating

18  this issue, [the Court] consider[s] whether the record as a whole is free from conflicts,

19  ambiguities, or gaps, whether all factual issues have been resolved, and whether the

20  claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775

21  F.3d at 1104–05.  "Where . . . an ALJ makes a legal error, but the record is uncertain and

22  ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105.  When,

23  as here, the ALJ's decision regarding the DAA Analysis is inadequate, remand for further

---

[8] Unlike *Parra*, nothing in the record indicated that the ALJ specifically gave the benefit of the doubt and assumed that Plaintiff was disabled.

findings is appropriate. *See Woodsum v. Colvin*, No. C16-5219-RAJ, 2016 WL 7486714, at *5 (W.D. Wash. Dec. 2016) ("[T]he ALJ's failure to apply the proper DAA analysis in this case renders his findings unreliable which, in turn, renders proper consideration of Ms. Woodsum's other claimed errors problematic. As such, the ALJ's failure to apply the proper DAA analysis in this case is an appropriate basis to remand this matter for further proceedings.").

As discussed above, the ALJ failed to properly conduct the DAA Analysis. Thus, the matter should be remanded with direction that the ALJ complete the initial five-step sequential evaluation without separating out the impact of substance abuse. *See Bustamante,* 262 F.3d at 955. Only if the ALJ makes a finding that the Plaintiff is disabled under the five-step inquiry, should the ALJ evaluate whether Plaintiff would still be disabled absent substance abuse. *Id.* The Court is not going to create reasons that the ALJ did not give or support in his findings, however, the Court does find that further administrative proceedings are necessary to allow the ALJ to do this sequential evaluation under these circumstances. Therefore, IT IS RECOMMENDED that the case be remanded, since not all factual issues have been resolved and it is not clear whether the Plaintiff is entitled to benefits under the applicable legal rules. *See Treichler*, 775 F.3d at 1104–05.

## B. ADDITIONAL ISSUES RAISED

Plaintiff appeared to also argue that the ALJ erred for three additional reasons: (1) for failing to properly evaluate Plaintiff's subjective complaints regarding whether Plaintiff's symptoms are controlled when taking medication, (2) for failing to properly evaluate Plaintiff's subjective complaints due to her daily activities, and (3) for not providing any explanation as to why the ALJ did not believe the second and third hypotheticals at Step Five. (ECF No. 12-1 at 3–6.) However, in light of the Court's conclusion that the ALJ erred with respect to his DAA Analysis, the ALJ will need to reconsider these additional issues on remand. Thus, it would be premature for the Court to

resolve these claimed errors now.  *See Parr v. Comm'r of Soc. Sec.*, No. 1:15-CV-314, 2016 WL 4064044, at *10 (S.D. Ohio July 2016), report and recommendation adopted, No. 1:15CV314, 2017 WL 1055151 (S.D. Ohio Mar. 2017) ("The ALJ's reevaluation of whether DAA is a contributing factor material to the disability determination may impact the ALJ's assessment of the medical opinion evidence, plaintiff's mental functional capacity in the absence of substance abuse, and plaintiff's credibility. [. . .] Thus, to address plaintiff's remaining assignments of error at this juncture would be premature."); *Wiggins v. Colvin*, No. C13-657-TSZ, 2013 WL 5913384, at *3, *7 (W.D. Wash. Nov. 2013) (finding that analyzing whether the ALJ erred in his omission of social limitations in the RFC and his failure to obtain VE testimony at step five would be premature since the court is already remanding the case due to the inadequate DAA Analysis).

However, in the event that the District Judge does not adopt the recommendation for remand above, the discussion of the additional issues are analyzed below.

1. Failure to Properly Evaluate Plaintiff's Subjective Complaints as to (1) Inconsistent Statements, & (2) Her Daily Activities.

   a.   Applicable Standard

The ALJ must engage "in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).  At the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*  "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)).

If the claimant satisfies the first step and there is no determination of malingering by the ALJ, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *See Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021); *Treichler*, 775 F.3d at 1102 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Garrison*, 759 F.3d at 1014–15; *Parra*, 481 F.3d at 750). This standard is "the most demanding required in Social Security cases." *Smith*, 14 F.4th at 1112 (citing *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). This court has set forth the specific finding required:

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*See Smith*, 14 F.4th at 1112; *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining."); *Treichler*, 775 F.3d at 1102 (finding that the Ninth Circuit "require[s] the ALJ to 'specifically identify the testimony from a claimant [the ALJ] finds not to be credible and [. . .] explain what evidence undermines this testimony."); *Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("[T]he ALJ must identify what testimony is not credible and what evidence the claimant's complaints.").

The ALJ is "required to point to specific facts in the record" and may use "ordinary techniques of credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citing *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Smolen*, 80 F.3d at 1284).   The ALJ may consider at least the following when evaluating Plaintiff's subjective complaints: (1) reputation for truthfulness; (2) inconsistencies in either the claimant's testimony or between claimant's testimony and conduct; (3) daily activities; (4) work records; and (5) testimony from physicians and third parties concerning the nature, severity and effect of claimant's condition. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Thomas*, 278 F.3d at 958–59; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c). Ordinary techniques of credibility evaluation may also be relied upon by an ALJ and include prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid, and the claimant's daily activities. *See, e.g.*, *Burrell*, 775 F.3d at 1138 (citing *Vasquez*, 572 F.3d at 592); *Tommasetti*, 533 F.3d at 1040; *Light*, 119 F.3d at 792; *Agsaoay v. Colvin*, No. 315CV02728GPCNLS, 2017 WL 1149285, at *6 (S.D. Cal. Mar. 2017) (citing *Smolen*, 80 F.3d at 1284). "General findings," however, are "insufficient" under this standard. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

Daily activities form the basis for an adverse credibility determination when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable work skills. *See*, *e.g.*, *Fore v. Kijakazi*, No. 20-36118, 2022 WL 421945, at *1 (9th Cir. Feb. 11, 2022); *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017); *Ghanim*, 763 F.3d at 1165; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Molina*, 674 F.3d at 1112–13 (listing factors to consider in evaluating a claimant's testimony, including "whether the claimant engages in daily activities inconsistent with the

1    alleged symptoms" and whether "the claimant reports participation in everyday activities

2    indicating capacities that are transferable to a work setting").

3         "Daily activities may [. . .] be 'grounds for an adverse credibility finding if a claimant

4    is able to spend a substantial part of his day engaged in pursuits involving the performance

5    of physical functions that are transferable to a work setting." *Ghanim*, 763 F3d at 1165.

6    However, the "ALJ must make 'specific findings relating to the daily activities' and their

7    transferability to conclude that a claimant's daily activities warrant an adverse credibility

8    determination." *Orn*, 495 F.3d at 639 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th

9    Cir. 2005)).   Engaging in daily activities that are incompatible with the severity of

10   symptoms alleged can also support an adverse credibility determination. *Trevizo*, 871 F.3d

11   at 682 (citing *Ghanim*, 763 F.3d at 1165); *see also Orn*, 495 F.3d at 639; *Batson*, 359 F.3d

12   at 1196.

13        It is also insufficient for an ALJ to articulate specific, clear, and convincing reasons

14   merely by "partially and artfully, discrediting testimony 'to the extent that' or 'insofar as'

15   it conflicts with her RFC determination." *Schultz v. Colvin*, 32 F. Supp. 3d 1047, 1059

16   (N.D. Cal. 2014) (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th

17   Cir. 2011)). "[R]ather, the ALJ must identify what testimony is not credible and what

18   evidence undermines the claimant's complaints." *Ghanim*, 763 F.3d at 1163.  However, if

19   the ALJ's credibility finding is supported by substantial evidence in the record, we may

20   not engage in second-guessing. *See Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r

21   of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

22              b.    Analysis

23        As to Step One, the ALJ first determined that the Plaintiff's medically determinable

24   impairments could reasonably be expected to cause the alleged symptoms.  (ECF No. 11-

25   2 at 31–32.)  Regarding Step Two, the ALJ did not find that Plaintiff was malingering and

26   evaluated the intensity, persistence, and limiting effects of the Plaintiff's symptoms to

27

28

determine the extent to which they limit the Plaintiff's functional limitations.  (*See id.* at 32–42.)

The specific issue involves whether the ALJ provided "specific, clear, and convincing reasons," supported by substantial evidence, in discounting Plaintiff's statements regarding: (1) whether Plaintiff is not disabled and higher functioning while on medication, and (2) whether Plaintiff's daily activities can be used to show non-disability. (ECF No. 12-1 at 3–6); *see Treichler*, 775 F.3d at 1102 ("[T]he ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms.").  The Court addresses each reason in turn.

### i.   Inconsistent Statements

Plaintiff maintained that the a "major issue in the ALJ's decision is that he concludes that she is not disabled because he believes there is evidence that her symptoms are controlled when she is on medications." (ECF No 12-1 at 3.)  Plaintiff argued that it is common for people that suffer from Bi-Polar disorder to fail to take their medication and a major symptom is an inability to follow drug treatment routines.  (*Id.* at 4.)  Plaintiff stated that "[p]art of the issue with Bi-Polar is there are times of normalcy and times of increased issues with symptoms." (*Id.*)

Plaintiff argued that the ALJ did not "make any effort in the decision to distinguish [Plaintiff's] levels of impairment between when [Plaintiff] is taking her medication and when she is not." (*Id.*)  Plaintiff maintained that the ALJ "disregard[ed] all of the objective medical statements about [Plaintiff's] condition made by actual doctors[9]" and

---

[9] The ALJ addressed three medical source opinions in his decision, two state agency consultants, Barbara Moura, PsyD and Frank Gonzales, PhD, and the Johnson/Dulnak Opinion.  (ECF No. 11-2 at 38–39.) The ALJ first indicated that he found the opinion statements of the state agency consultants Barbara Moura, PsyD, and Frank Gonzales, PhD, as persuasive because they are supported by explanation and their statements are largely consistent with the record as a whole.  (*Id.* at 38–39.)  Although she does not specify what opinion she is referencing, Plaintiff appeared to be referencing the opinion by NF

"discount[ed] all of the treating physician's opinions as unsupported by the record" regarding Plaintiff's symptoms not being controlled while on medications.  (*Id.*)[10]

Defendant argued that "the ALJ considered Plaintiff's non-compliance in the context of evaluating Plaintiff's subjective claims[.]"  (ECF No. 13 at 8.)  Defendant indicated that "the ALJ explained that Plaintiff inconsistently reported medication compliance" and "concluded that Plaintiff's inconsistent reports undermined the accuracy of Plaintiff's reporting[.]"  (*Id.*)  Defendant pointed out that "while Plaintiff appears to assert that her mental impairments rendered her incapable of taking medication as prescribed, her treating physicians continued to prescribe treatment of medication and therapy and nowhere indicated she was not capable of following their recommendations or that any other type of mental-health treatment was required[.]"  (*Id.*)

---

Christine Johnson, which was affirmed by Dr. Dulnak ("Johnson/Dulnak Opinion"), since it is the only opinion provided in the medical record that the ALJ found as being less persuasive.

[10] Plaintiff also cited to the hearing transcript when arguing that the ALJ ignored testimony that Plaintiff's mental health issues were disabling, where she testified that she was diagnosed in middle school, had to change schools due to mental health issues, and has not been able to hold down a job even before her drug use.  (ECF No. 12-1 at 5.)  Plaintiff maintained that "[t]his supports that her Bi-Polar issues are far greater than the ALJ credits."  (*Id.*)

However, the ALJ addressed these in his decision.  The ALJ acknowledged that Plaintiff is able to maintain a job when taking medication as prescribed.  (ECF No. 11-2 at 33.)  The ALJ discussed that Plaintiff suffered from her impairments when she was young and that she transferred schools.  The ALJ stated:

> [T]he [Plaintiff] testified at hearing to similar mental condition problems when she was younger including that she was moved to a smaller school where she could focus, because being manic or being depressed she really struggled with getting her school work or homework done and had a hard time getting out of bed and going to school a lot of the time.

(*Id.* at 36.)  The ALJ then found that "[e]vidence verifies that once transferred to a smaller school, the [Plaintiff] reported that she was 'good' about doing her homework, she was really organized and her notebooks were color coordinated, she is 'pretty smart' actually, and that when she graduated her senior year she was at a 4.0 GPA[.]"  (*Id.*)

26

During his discussion of the Plaintiff's RFC, the ALJ stated:

> [I]nconsistent with the claimant's allegations, including her allegation that even with medicine she still struggles with her psychiatric cycles on a daily basis, evidence verifies that the claimant otherwise notably reported that when she takes her medication as prescribed, she is higher functioning and is able to maintain a job and/or school responsibilities. Exhibit 7F/55. In addition, the claimant's compliance with her medication is questionable, as evidence verifies that the claimant herself reported purposefully stopping her medication, which helps to stabilize her mood, because she enjoys being in a "manic state" and wants to be the "life of the party." Exhibit 7F/55. See also, Exhibit 7F/64 (Evidence verifies that the claimant reported that she enjoys the feeling of being manic).
>
> Moreover, other evidence verifies that the claimant inconsistently reported medication compliance. For example, evidence verifies that the claimant reported that she was stable on medication until July 2016 (Exhibit 7F /47), yet elsewhere notably reported in September 2017 that she has not been on consistent medication for two years (Exhibit 7F/55).

(ECF No. 11-2 at 33–34.)

In evaluating Plaintiff's subjective complaints, the ALJ is permitted to consider Plaintiff's prior inconsistent statements concerning the symptoms and how she was with and without medication. *See Ghanim*, 763 F.3d at 1163; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.") (citing *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989); *Bunnell*, 947 F.2d at 346); *Smolen*, 80 F.3d at 1284 ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible," the ALJ can consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid[.]").

The ALJ relied on Plaintiff's inconsistent statements to support his finding that Plaintiff was fine when taking medications. The ALJ's decision identified Plaintiff's allegations that even with medicine she still struggles with her psychiatric cycles on a daily basis. The ALJ cited to evidence that showed that Plaintiff reported on October 18, 2017 that she had "higher functioning and is able to maintain a job and/or school responsibilities" when taking her medication as prescribed. (ECF Nos. 11-2 at 33; 11-7 at 90, 183, 184.) The ALJ also noted that compliance with her medication was inconsistent, citing to evidence that Plaintiff would stop her medication to help stabilize her mood, while she enjoyed being in a manic state and the life of the party. (ECF Nos. 11-2 at 34; 11-7 at 90, 175, 183–84, 192.)

As regards her alleged inconsistent compliance, the Ninth Circuit has repeatedly indicated that "it is a questionable practice to chastise one with mental impairment for the exercise of poor judgment in seeking rehabilitation" and that it is inappropriate to punish the mentally ill for occasionally going off their treatment, especially if one can attribute part of the reason for noncompliance to the "underlying mental afflictions." *Guzman v. Berryhill*, 356 F. Supp. 3d 1025, 1038 (S.D. Cal. 2018) (citing *Garrison*, 759 F.3d at 1018 n.24); *see also Regennitter v. Commissioner of Soc. Sec. Adm.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999).

The citations that the ALJ believed supported his finding that Plaintiff's symptoms were fine when she was taking medication do not take into consideration objective evidence in the record that indicated that there were times when Plaintiff was not as high functioning while taking medication and still suffered from her impairments while on medication. An Individual Progress Note from November 1, 2017 stated they were changing Plaintiff's medications because she was still continuing to have "[r]apid cycling and having ups and downs daily" and the "[m]edication is sometimes too sedating." (ECF No. 11-8 at 26.) On March 12, 2018, an Individual Progress Note indicated that Plaintiff

28

liked her current medications, but still continued to have her Bipolar mood swings that were not as severe as before. (ECF No. 11-7 at 125.) A Group Progress Note from April 4, 2018 indicated that Plaintiff presented with a slightly disheveled in appearance and anxious mood. (ECF No. 11-8 at 60.) This note stated that Plaintiff continued to struggle with symptoms of mania, depression and drug cravings, despite continuing with her treatment plan. (*Id.* at 60–61.) An April 18, 2018 Individual Progress Note indicated that Plaintiff complained of cycling rapidly and experiencing mixed episodes. (*Id.* at 72.) Plaintiff indicated that her medication was no longer effective for sleeping and that she felt that she was getting ready to crash into depressive episode, while requesting to try a Abilify maintain shot for stabilizing her mood. (*Id.*) Despite taking medications, the Group Progress Note from the same day, April 18, 2018, indicated that Plaintiff reported being in depressed and anxious mood since she was going from a manic episode into a depressive episode. (*Id.* at 74.) An Individual Progress Note from April 20, 2018 stated that she recently started her psychotropic medications injections to be consistent with her medications, but the injections make her very sleepy. (*Id.* at 82.)

A Group Progress Note from May 10, 2018 indicated that despite Plaintiff being consistent and compliant with treatment, Plaintiff still complained that her depressive symptoms and mood instability continue to affect her daily, causing social and occupational impairment. (*Id.* at 98–99.) A June 26, 2018 Individual Progress Note indicated that Plaintiff presented severe depression with low motivation, loss of appetite, and social isolation. (*Id.* at 134.) In response to her request, the doctor adjusted her medication. (*Id.*) In the County of San Diego's October 3, 2018 behavior health assessment, Project Enable indicated that Plaintiff had been enrolled in treatment since September 18, 2017, but she still had a mixed episode between her depression and mania in the past two weeks. (ECF No. 11-7 at 204.)

A January 16, 2019 Individual Progress Note indicated that Plaintiff was attending her treatment sessions and is medication compliant, earning her a Peer Support certification, and instructed Plaintiff to continue medication and her 1:1 treatment.  (ECF No. 11-9 at 25–26.)  While two days later, on January 18, 2019, an Individual Progress Note indicated that despite stating that she feels more stable than she has in the past, she still felt depressed and possibly on an upswing to mania.  (*Id.* at 29.)  An Individual Progress Note from March 27, 2019 indicated that her anxiety was so bad that nothing was working to control it and that she has turned to paranoia that someone is going to harm her.  (*Id.* at 63.)  Plaintiff indicated that she tried coping skills to reduce her anxiety symptoms, but she did not feel any difference with her anxiety levels after using them.  (*Id.*)  Plaintiff then stated that "I need to go to the hospital."  (*Id.*)

Further, an Individual Progress Note from November 28, 2018 noted that the plan of care was to continue with the current medication, but changed the dosage of Lithium and Ambien, while possibly considering the use of Vraylar.  (*Id.* at 8.)  A December 26, 2018 Individual Progress Note indicated that Plaintiff had a depressed mood and wanted to return to her previous medication regime.  (*Id.* at 21.)  Plaintiff stated that her current medication regime, which involved stopping Abilify Maintena and adding Vraylar, made her feel increased depression, anhedonia, and difficulty getting out of bed.  (*Id.*)  During the physical health exam on January 18, 2019, the doctor noticed that Plaintiff possibly had endocrine from hypothyroid / hypercalcernia and as a result, that they may have to consider weaning Plaintiff off of the medication Lithium.  (*Id.* at 29.)  On June 27, 2019, Plaintiff's medications were listed as Abilify injections and Lithium for her bipolar disorder; Buspirone and Klonopin for anxiety; and Ambiem for sleeping.  (ECF No. 11-6 at 76.)  As for her current medications, Plaintiff testified on July 22, 2019 that she was taking "Abilify Maintena, which is an intermuscular shot that I receive. [She] take[s] Buspirone which is an anxiety pill. [She] take[s] Klonopin, which is an anxiety pill. [She] take[s] Effexor which

is a depression med, and [she] was taking Lithium as a mood stabilizer, but because of [her] physical health, they had to remove [her] off the Lithium and [she] see[s] [her] psychiatrist on the 29th and she's [was] going to put [her] on a new med stabilizer." (ECF No. 11-2 at 65.)  In fact, Plaintiff told the ALJ that "I haven't been able to find a medicine regiment that keeps me -- like I said, I couldn't even tell you what a baseline for me feels like. I'm always either manic or depressed or anxious." (*Id.* at 66.)

The Court finds this objective medical evidence supports her testimony that she suffers from her symptoms even when taking medication.  It further shows that despite taking medication, doctors were still trying to find the correct medicine regiment to try to stabilize Plaintiff's symptoms and allow her to function properly. [11]

The ALJ failed to provide any clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony that even with medicine she still struggled with her psychiatric cycle on a daily basis.  The ALJ failed to acknowledge the contrary medical evidence cited herein.  The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *Mayes*, 276 F.3d at 459.  The ALJ did not consider the record as a whole and did not weigh the evidence that detracts from the ALJ's conclusion. *See id.*

Accordingly, IT IS RECOMMENDED that the Court find that the ALJ erred in discrediting Plaintiff's testimony regarding whether she still suffers from her symptoms even when taking medication.

///

///

---

[11] In regard to Plaintiff's argument that the ALJ ignored all statements in the Johnson/Dulnak Opinion in deciding that Plaintiff's symptoms were controlled when on medications, (ECF No. 12-1 at 4), the Johnson/Dulnak Opinion did not address whether Plaintiff would be able to function better while taking medication, (ECF No. 11-7 at 226–31).

ii.   <u>Daily Activities</u>

Plaintiff briefly argued that "it is impossible to gauge her level of impairment solely from her daily activities" without knowing whether Plaintiff was taking her medication at that moment. (ECF No. 12-1 at 4, lines 15–17.) Further, Plaintiff urged the court to reject the ALJ's decision where he relied heavily on daily activities to show non-disability. (*Id.* at 5, lines 3–4.)

Defendant argued that "[t]he ALJ also reasonably concluded that Plaintiff's activities of daily living were consistent with Plaintiff's restrictive RFC." (ECF No. 13 at 7.) Defendant maintained that "Plaintiff was able to engage in a significant range of activities that were consistent with her RFC for simple tasks and occasional contact with supervisors and coworkers and minimal, superficial contact with the public[.]" (*Id.*)

The ALJ questioned Plaintiff's symptom allegations, stating that the accumulated evidence in the overall longitudinal record of daily activities "seriously calls into question all of the [Plaintiff's] allegations and any deficiencies found upon objective examination." (ECF No. 11-2 at 34.) In support, the ALJ stated:

> For example, evidence verifies that the [Plaintiff] reported attending to her father after his hip surgery, and while she reported that she felt tired, the [Plaintiff] still reported that she felt good knowing that she could take care of her father during this time, undermining the [Plaintiff's] allegations, including her allegations that she must rely on the assistance of her friends and family for her basic needs and therefore is unable to work. Exhibit 1E/7, 9F/68. See also, Exhibit 9F/78 (Evidence verifies that the [Plaintiff] reported taking care of her father, that it is a lot of hard work to take care of someone, but that she feels she is doing her best, undermining her allegations of not being able to work at Exhibit 9F/127, 144).

> In addition, evidence verifies that the [Plaintiff] talks and texts on her cell phone, watches TV, goes to see a friend, goes to the movies, and socializes about one to two times per week. Exhibit 6E/5. Further, other evidence verifies that the [Plaintiff] reported that every day she reads and watches movies/TV and that she does these things "well," as well as reporting that she does cleaning and laundry, goes to Denny's and her friend's house on a regular

basis, spends time with others on phone calls, at lunch, and at the movies once per week, and that she does not need anyone to accompany her. Exhibit 7E/3, 5. In addition, notwithstanding the [Plaintiff's] allegations, other evidence verifies that the [Plaintiff] reported being able to go out of town for a family emergency (Exhibit 9F/32), ride on a bus (Exhibit 9F/83), does homework (Exhibit 9F/95), and completed courses resulting in a certification from the National Alliance on Mental Illness (NAMI) as a 'Peer Specialist' that will allow her to work with others (Exhibit 9F/110, 153, 215).

Further, notwithstanding the [Plaintiff's] allegations, other evidence confirms that the [Plaintiff] reported that her mother took her on a shopping spree (Exhibit 9F/185), reported that she was productive by cleaning the house (Exhibit 9F/185), reported that she had a nice time over Christmas and got a purse she had been wanting (Exhibit 9F/204, 206), reported being a Maid of Honor for a wedding (Exhibit 9F/213), reported being able to cope with a recent bridal shower appropriately (Exhibit 9F/213), reported that she threw a "perfect bridal shower" for her best friend (Exhibit 9F/216), reported going to a bachelorette party in Las Vegas with her friends (Exhibit 9F/221, 236), reported that she did "house-sitting" for a week (Exhibit 9F/221), reported that keeping busy, crafting, and friends are coping skills (Exhibit 9F/227), and reported that she drank alcohol at her best friend's wedding (Exhibit 9F/245). In addition, other evidence verifies that the [Plaintiff] reported other plans to "house-sit" (Exhibit 9F/247), wanted to begin volunteering as a 'Peer Specialist' to keep herself busy (Exhibit 9F/247), and reported taking care of her cat (Exhibit 7F/84).

Further, other evidence verifies that the [Plaintiff] reported activity including dating someone who grounds her (Exhibit 9F/35), and elsewhere reported doing online dating (Exhibit 9F/275-276), talking to a "new guy" (Exhibit 9F/282), meeting someone "new" (Exhibit 9F/284-285), entering into a relationship with a new boyfriend (Exhibit 9F/288), that this relationship was "going strong" (Exhibit 9F/290), but that the [Plaintiff] ended the relationship because of the "controlling" nature of the other party (Exhibit 9F/295), undermining her allegations including her allegations at hearing "I just don't live. It's like I have no life." In addition, evidence verifies that the [Plaintiff] reported that she had dinner with her parents, that it went really well, that she had a good time (Exhibit 9F/277), that going on a walk is a coping skill (Exhibit 9F/291), and that exercising more helps with her depression (Exhibit 9F/130). See also, Exhibit 9F/54 (Evidence verifies that the claimant was dressed in workout apparel). Further, other evidence verifies that the

[Plaintiff] was "very consistent" in attending therapy groups (Exhibit 9F/81), received certificates of attendance (Exhibit 9F/250), received praise from other group members including a statement "your support has helped me through some dark times" (Exhibit 9F/304), interacted well with other group members including remarking to another member concerning sobriety, "congratulations, you have done a great job!" (Exhibit 9F/239), and otherwise interacted during group sessions in areas such as reading poetry (Exhibit 9F/136).

[. . .] This evidence combined with other similar evidence of being able to focus, such as in knitting and reading, doing homework (Exhibit 9F/95), and completing courses resulting in a certification from the National Alliance on Mental Illness (NAMI) as a 'Peer Specialist' (Exhibit 9F/110, 153,215), suggests a greater amount of work related functionality than the [Plaintiff's] allegations.

(ECF No. 11-2 at 34–36, 40–41.)

An "ALJ [is] permitted to consider daily living activities in his credibility analysis." *Burch*, 400 F.3d at 681. Daily activities "form the basis for an adverse credibility determination" when: (1) the daily activities meet the threshold for transferable work skills or (2) the daily activities contradict the claimant's other testimony. *Orn*, 495 F.3d at 639; *see also Trevizo*, 871 F.3d at 682. The Court first considers whether the ALJ erred in finding Plaintiff's daily activities met the threshold for transferable work skills.

"Daily activities may [. . .] be 'grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Ghanim*, 763 F3d at 1165 (quoting *Orn*, 495 F.3d at 639). However, the "ALJ must make 'specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn* 495 F.3d at 639 (quoting *Burch*, 400 F.3d at 681). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony [ ] because impairments that would unquestionably preclude work and all the pressures of a workplace

34

environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. *see*, *e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 667–68 (9th Cir. 2017) (concluding that a claimant's ability to perform household chores, feed her pets, and visit family was not a valid reason to discount her testimony); *Orn*, 495 F.3d at 639 (concluding that a claimant's ability to perform activities such as reading, watching television, and coloring in coloring books were not valid reasons to discount her testimony); *Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001) (concluding that a claimant's ability to perform activities with respect to leaving the house, shopping for groceries, and spending time with friends were not valid reason to discount her testimony).

Although the ALJ found that "[a]ll of this evidence combined suggests a much greater amount of work-related functionality than the [Plaintiff's] allegations without substance use [,]" he did not discuss how Plaintiff's daily activities were transferable to a work setting. (*See* ECF No. 11-2 at 36, 38, 41.)  The ALJ only made a general finding that the daily activities suggest a much greater amount of work-related functionality.  *See Reddick*, 157 F.3d at 722 ("General findings are insufficient[.]"); *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  However, the ALJ was required to make specific findings relating to the daily activities and their transferability to be able to conclude that Plaintiff's daily activities warranted an adverse credibility determination.  *See Orn*, 495 F.3d at 639.  Therefore, the ALJ erred.

As to whether Plaintiff's daily activities contradict her other testimony, "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."  *Ghanim*, 763 F.3d at 1165 (citing *Orn*, 495 F.3d at 639; *Batson*, 359 F.3d at 1196).

The ALJ found that the accumulated evidence in the overall longitudinal record of daily activities "seriously calls into question all of the [Plaintiff's] allegations and any deficiencies found upon objective examination."  (ECF No. 11-2 at 34.)  Besides this

statement, the ALJ's decision lacked any mention of Plaintiff's specific testimony regarding her impairments that the ALJ believed were contradicted by her daily activities. The ALJ erred by failing to specifically identify any part of Plaintiff's testimony that he determined was not credible, which has prevented the Court from conducting a meaningful judicial review. *See Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."); *Reddick*, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Smolen*, 80 F.3d at 1284 ( [a]n ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").  And the ALJ cannot expect the courts to "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 494; *see also Reddick*, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

Notwithstanding, Plaintiff's testimony indicated that although there would be days where she suffered greatly from her impairments, there were other times where her impairments were not as severe.  For instance, Plaintiff testified that although the medication would allow Plaintiff to handle her cycles better, it was not significant improvement as she would continue to have these cycles.  (ECF No. 11-2 at 68.)  In response to the ALJ's question regarding whether the daily activities accurately reflected Plaintiff's ability at that time, the Plaintiff testified:

> It was accurate for about a month. I got about a month where I was doing what I would say okay. I still struggle. I struggle with suicidal thoughts on a daily basis because I do really struggle with my mental health. I was in a place where the knitting and the reading was a coping skill that we were trying to - - I was in mania. So, we were trying to come up with coping skills to help take some of that energy down. So, I was knitting for hours, but again, I was manic.

> So, I had energy for days. [. . .] It just -- for maybe about a month, I did okay,
> but again, went right back into a cycle and struggled.

(*Id.* at 70.)

The daily activities that the ALJ relies on do not exactly contradict Plaintiff's testimony in light of her bipolar disorder. This disorder is episodic in nature, affecting her on some days and not others. *See Smith v. Saul*, 820 F. App'x 582, 585 (9th Cir. 2020) ("Bipolar disorder is a condition that is notably episodic and does not manifest every day. [. . .] [B]ipolar disorder[s] are episodic conditions that adversely affect patients on some days and not others.") (citing *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016)); *Buck v. Colvin*, 540 F. App'x 772, 773 (9th Cir. 2013) ("Given the episodic nature of bipolar disorder, short-lived improvements in functioning are consistent with the diagnosis."); *Edler v. Astrue*, 391 F. App'x 599, 601 (9th Cir. 2010) ("The ALJ's rejection of the opinion of Edler's treating physician relied on selective citations to periodic improvements in Edler's treatment record that are fully consistent with Edler's Bipolar I disorder, a disease that is, by definition, episodic.") (citing National Institute of Mental Health, Bipolar Disorder 1 (2009) ("People with bipolar disorder experience unusually intense emotional states that occur in distinct periods called 'mood episodes.'")).

The ALJ did not consider Plaintiff's bipolar disorder in discrediting her testimony given the daily activities the ALJ found she could perform. The ALJ did not explain how Plaintiff's ability to engage in these activities cited to in the decision contradicted her symptom testimony when she would have times of normalcy as well as having her cycles of depression and mania. And when the daily activities described do not contradict Plaintiff's testimony, they cannot serve as a basis for an adverse credibility determination. *See Ghanim*, 763 F.3d at 1165. Therefore, the ALJ erred in finding that the daily activities were inconsistent with Plaintiff's alleged degree of impairment.

Thus, IT IS RECOMMENDED that the Court find that the ALJ erred in failing to make specific findings that these activities are transferable to a work setting, failing to

specifically identify Plaintiff's testimony that he determined not credible, and finding that these daily activities were inconsistent with Plaintiff's allegations

### 2. Failure to Explain Decision Not To Use Second & Third Hypotheticals

#### a. Applicable Standard

At Step Five, the ALJ has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845–46 (9th Cir. 2015) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995)).   The ALJ may meet his burden of demonstrating the claimant is not disabled and that she can engage in some type of substantial gainful activity that exists in "significant numbers" in the national economy, by propounding to a VE.  *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995); *Mahallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

Typically, the ALJ asks the VE whether, given certain hypothetical assumptions about the claimant's capabilities, "the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy."  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.3 (9th Cir. 1988).  An ALJ posing a hypothetical question to a VE "must set out all the limitations and restrictions of a particular claimant*." Salerno v. Astrue*, 266 Fed. Appx. 570, 573 (9th Cir. 2008) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)).  The ALJ is required to include only those limitations which are supported by substantial evidence in the hypothetical posed to a VE.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). "Conversely, an ALJ is not free to disregard properly supported limitations."  *Robbins*, 466 F.3d at 886.

However, the ALJ need only include in the hypothetical those limitations that the ALJ finds credible and that are supported by substantial evidence in the record.  *Osenbrock*, 240 F.3d at 1164–65. While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately

1  serves as the basis for the ALJ's determination must be supported by substantial evidence

2  in the record as a whole.  *Id.* at 1163 (citing *Roberts*, 66 F.3d at 184).

3          b.    Analysis

4          Plaintiff pointed to the ALJ's three hypotheticals that were given to the VE.  (ECF

5  No. 12-1 at 6.)  Plaintiff noted that the ALJ used the first hypothetical, but Plaintiff argued

6  that "the ALJ does not provide any discussion why he does not believe that [Plaintiff's]

7  impairments do not cause a 15% reduction in time on task or will cause [Plaintiff] to miss

8  five days per month."  (*Id.* at 6; *see also* ECF No. 14 at 2.)  Plaintiff maintained that "this

9  case comes down to the Step Five analysis by the [ALJ] to determine if the Plaintiff can do

10  other work."  (ECF No. 14 at 2.)  Plaintiff stated that "the ALJ is the one who provided the

11  hypothetical for the '15% off task' restriction. [. . .] Yet the ALJ provides no discussion as

12  to why he believes that his own restriction doesn't apply."  (*Id.*)

13          Defendant maintained that although Plaintiff indicated that "the record necessitated

14  a '15% reduction in time on task[,]'"she only cited to a non-binding hypothetical question

15  that the ALJ posed to the VE.  (ECF No. 13 at 10.)

16     The hypothetical that the ALJ used in his Step Five finding is as follows:

17     [I]nitially, I would like you to assume a hypothetical individual of our
18     claimant's age, education, and work experience who is able to perform the full
       range of exertional demands defined by the regulations, but with the following
19     non-exertional limitations. This individual can learn, remember, and perform
       simple, routine, and repetitive work tasks involving simple, one and two-step
20     work instructions which are performed in a routine, predictable, and low stress
       work environment, which I define as one in which there are no rapid
21     production pace work tasks or high quota requirements; few workplace
       changes; and no close personal supervision. This individual can attend,
22     concentrate and maintain pace for two hours at a time with normal breaks.
23     This individual may have occasional contact with supervisors and co-
       workers. This person should have only minimal and superficial contact with
24     the public.

25

26

27                                            39

28

(ECF No. 11-2 at 73.)   The VE indicated that there were jobs available in the national economy for a person with these limitations, specifically mentions a packager, industrial cleaner, and laundry worker.  (*Id.* at 73–74.)

For the second hypothetical, the ALJ stated that assuming "that due to a combination of severe psychological impairments and associated symptoms, including the side effects of medications, that [the] hypothetical individual would routinely be off task a minimum of 15% of the work period." (*Id.* at 74.)  The VE then indicated that these limitations would preclude competitive employment.  (*Id.*)  For the third hypothetical, the ALJ asked "[i]f an individual due to depression or other psychological symptoms were to remain in bed approximately five days a month without reporting for work, would there be any jobs available?"  (*Id.*)   To which the VE again responded that it would also preclude all employment.  (*Id.*)

The Plaintiff takes issue with the second and third hypotheticals. Specifically, the Plaintiff alleged that the ALJ erred for not providing "any discussion why he does not believe that [Plaintiff's] impairments do not cause a 15% reduction in time on task or will cause [Plaintiff] to miss five days per month." (ECF No. 12-1 at 6.)  Plaintiff is basically arguing that the ALJ should have explained his reasons for not adopting the second and third hypothetical.

However, while the ALJ may provide a range of hypothetical questions to the VE, it is only the hypothetical that ultimately served as the basis for the ALJ's determination that must be supported by substantial evidence in the record as a whole.  *See Ortega v. Berryhill*, No. 16CV3098-JM-BLM, 2018 WL 707815, at *7 (S.D. Cal. Feb. 2018) (citing *Osenbrock*, 240 F.3d at 1163), report and recommendation adopted, No. 16CV3098-JM-BLM, 2018 WL 1633812 (S.D. Cal. Apr. 2018).  Here, Plaintiff is not arguing that the ALJ erred in using the first hypothetical, the hypothetical that was ultimately served as the basis for the ALJ's determination.  As such, IT IS RECOMMENDED that the Court find that

the ALJ did not err for not explaining his reasons for not adopting the second or third hypotheticals.

### 3. Harmless Error

"ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'"  *Marsh*, 792 F.3d at 1173 (quoting *Stout*, 454 F.3d at 1055–56); *see also Carmickle*, 533 F.3d at 1162 (An ALJ's reliance on erroneous reasons is harmless so long as the "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence").  "[W]here the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Marsh*, 792 F.3d at 1173.

As discussed herein, the ALJ failed to properly evaluate Plaintiff's subjective testimony.  The Court cannot find the ALJ's erroneous rejection of Plaintiff's testimony as harmless, because if credited, it would likely be consequential to the ultimate disability determination.  *See Brown-Hunter*, 806 F.3d at 489, 494 (finding that the ALJ's failure to identify the testimony she found not credible and failure to link that testimony to the particular parts of the record supporting her non-credibility determination was legal error and was not harmless); *Jenks v. Kijakazi*, No. 20CV1432-AJB-BLM, 2021 WL 5810646, at *7 (S.D. Cal. Dec. 2021) ("Because the ALJ failed to adequately identify the testimony he found not credible as well as the specific evidence that undermines each statement, the Court cannot conduct a meaningful review of the ALJ's reasoning and, therefore, the error is not harmless.").

### 4. Remand is Required

"The rare circumstances that result in a direct award of benefits are not present in this case." *Leon*, 880 F.3d at 1047.  "[T]he court ordinarily must remand to the agency for further proceedings before directing an award of benefits" if the ALJ denies benefits and the court finds error.  *Id.* at 1045 (citing *Treichler*, 775 F.3d at 1099).  The credit-as-true

analysis "permits, but does not require, a direct award of benefits on review but only where the [ALJ] has not provided sufficient reasoning for rejecting testimony and there are no outstanding issues on which further proceedings in the administrative court would be useful." *Id.* at 1044. Under the three-part rule, the Court first considers "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence[,]'" which is met for the reasons set forth above. *Id.* at 1045 (quoting *Garrison*, 759 F.3d at 1019).

However, at the second step, the Court considers "whether there are 'outstanding issues that must be resolved before a disability determination can be made' and whether further administrative proceedings would be useful.'" *Id.* (quoting *Treichler*, 775 F.3d at 1101). "In evaluating this issue, [the Court] consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775 F3d at 1104–05. "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105. When, as here, the ALJ's findings regarding the Plaintiff's symptom testimony are inadequate, remand for further findings on credibility is appropriate. *See Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995).

As discussed above, the ALJ failed to properly evaluate Plaintiff's subjective testimony. The ALJ's findings are inadequate and further administrative review may remedy the ALJ's errors, making remand appropriate in this case. *See Ghanim*, 763 F.3d at 1166; *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Byrnes*, 60 F.3d at 642. The Court is not going to create reasons that the ALJ did not give or support in his findings, however, the Court does find that further administrative proceedings are necessary to allow the ALJ to do this sequential evaluation under these circumstances. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("[I]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic

work activities, the sequential evaluation should not end with the not severe evaluation step."). Therefore, the Court RECOMMENDS that remand is proper in this case, since not all factual issues have been resolved and it is not clear whether the Plaintiff is entitled to benefits under the applicable legal rules. *See Treichler*, 775 F3d at 1104–05.

## VI.   CONCLUSION

Based on the above reasoning, the undersigned Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 12) be **GRANTED**, that Defendant's Cross-Motion for Summary Judgment (ECF No. 13) be **DENIED**, and that the case be **REMANDED** to the agency for further proceedings.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **April 22, 2022**, any party to this action may file written objections with the Court and serve a copy to all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **May 4, 2022**.

**IT IS SO ORDERED**.

Dated:  April 6, 2022

Hon. Bernard G. Skomal
United States Magistrate Judge